## THE ELEVENTH CIRCUIT


### No. 24-10937-J


### MICHAEL COURTNEY SHIRLEY
### Appellant,
### v.
### UNITED STATES OF AMERICA,
### Defendant-Appellant.


### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF FLORIDA


### INITIAL BRIEF


**H. Kyle Fletcher, Esq.**
**Florida Bar Number: 930628**
**3743 Savannah Loop**
**Oviedo, Florida 32765**
**Telephone 407-971-4727**
**Facsimile 407-971-4797**
**E-Mail kyle@thefletcherlawfirm.com**

**August 10,   2024**

No. 24-10937-J

*United States of America v. Michael Courtney Shirley*

**CERTIFICATE OF INTERESTED PERSONS**

The persons and entities interested in the outcome of this case are:

The following persons have an interest in the outcome of this case:

1.    Bratt, Chauncey Arthur, Assistant United States Attorney;

2.    Clarkson, Gavin Esq. Defendant attorney;

3.    Daniels, Amanda, Assistant United States Attorney;

4.    Fletcher, H. Kyle, Esq., Appellant's attorney;

5.    Handberg, Roger B., United States Attorney;

6.    Irick, Daniel, United States Magistrate Judge;

7.    Nielson, Michael Esq., Defendant's Attorney;

8.    Presnell, Gregory A. , United States Circuit Judge;

9.    Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

10.    Shirely, Michael, Defendant-Appellant.

## <u>TABLE OF CONTENTS</u>

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement…......... …*i*

Table of Contents………………………………………………………..……….*ii-ix*

Table of Citations and Authorities………………………………….………*iii-vi*

Statement Regarding Oral Argument ................................................................ *vi*

Statement Regarding Related Cases.................................................................. *vii*

Certificate of Compliance with Type-Volume Limitation…………………..,… *vii*

Preliminary Statement ………………………………………………..………*vii*

Statement of Jurisdiction........................................................................................*vii*

Statement of the Issues.................................................................... *vii- x*

Statement of the Case…………………………………………….……....... 1-55

A. Course of Proceedings and Disposition in the Court Below........ ………........ 1

B.   Statement of Facts ………………………………………………………1-5

C.   Standard of Review…………………………….………………………… …5-14

D.   Argument and Legal Authority……………………………….....…….  15-54

Conclusion………………………………………………………….…….…54

Certificate of Service………….……………………………….………………,,,,,,.,,.,,,,,…. 55

## <u>TABLE OF CITATIONS AND AUTHORITIES</u>

**CASES CITED:**                                                    **Pages**

*Bourjaily v. U. S.* 483, U. S. 171 (1987)……………………………..…….…6,18

*Bruton v. United States,* 391 U.S. 123, 127 (1968)……………………..…….27

*Butcher v. United States,* 368 F.3d 1290, 1297 (11th Cir. 2004)…………..……12

*Caradigm USA LLC v. PruittHealth, Inc., 964 F.3d 1259, 1277 n.12 (11th Cir. 2020)……………………………………………….…………………………………...12*

*Chapman v. California*, 386 U.S. 18 (1967)………………………...……...11,28

*Ciminelli v. United States* 143 S. Ct. 1121 (2023)………..……….2,19,30,31,34,52

*Coy v. Iowa*, 487 U.S. 1012 (1989)…………………………………………….28

*Crawford v. Washington* 541 U.S. 36, 50-51 (2004)……………..……………….20

*Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004)……………………………………………………………………12

*Delaware v. Van Arsdall*, 106 S.Ct. at 1431, 1438 (1986)………………….…….28

*Douglas v. Alabama*, 380 U.S. 415 (1965)…………………………..….21, 27

*Ellis v. Raemisch*, 872 F.3d 1064, 1090 (10th Cir. 2017)………………………..50

*Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999)…….12

*Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012) ………………..........12

*Kelly v. United States,* 590 U. S. 391 (2020)…………………………..…….30,35

*McDonnel*l V. United States,  579 U. S. 550 (2016)………………………… 30,35

*McMann v. Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)……………………………….………………………………………47

*Mercado v. City of Orlando,* 407 F.3d 1152, 1161 (11th Cir. 2005)….……..……10

*MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1215 (11th Cir. 2021)…..……12

*Milton v. State*, 993 So.2d 1047 (2008)……………………………….…..…,27,26

*Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1295–96 (**11th Cir**. 2000)…. 12

*Percoco v. United States*, 143 S. Ct. 1130 (2023)……….…..…2,30,34,35,42,50,52

*Skilling v. United State,* 561 US 358, 414 (210)……………………………30,35,42

*Snyder v. United States,* 599 U.S.  23-108 (2024)……………….……………30,35

*Strickland v. Washington,* 466 U. S. 668 #19 ( 1984)………………………47,48,49

*United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017)…………………..6,8

*United States v. Bowman,* 302 F.3d 1228, 1237 (11th Cir. 2002)…………………11

*United States v. Camacho,* 40 F.3d 349 ( 11th Cir. 1994)…………………………13

*United States v. DaVita Inc*. 592 F. Supp.3d 970 (2022)…………………………....6

*United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp.2d 628 (2006) ……………………………………………………………………….26

*United States v. Doran*, 882 F.2d 1511, 1526 (10th Cir. 1989)……………………7

United States v. *Eckhardt*, 466 F.3d 938, 947-48 (11th Cir. 2006)……………….29

 *United States v. Fernandez,* 722 F.3d 1, 19 (1st Cir. 2013)……………..……......38

*United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979)………………...………7,9

*United States v. Hands, 184 F.3d1322, 1329 (11ᵗʰ Cir. 1999)*……………………10

*United States v. Head,* 178 F.3d 1205, 1206 n. 3 (11ᵗʰ Cir.1999)……………..…..14

*United States v. Hernandez*, 829 F.2d 988, 995 (10th Cir. 1987)……..….…..…..7

*United States v. Hopkins,* 433 F.2d 1041, 1044 (5th Cir. 1970)……………………9

*United State*s v. *Jefferson,* 925 F.2d at 1254 (10ᵗʰ Cir. 1995)……………..….……11

*United States v. Jennings*, 160 F.3d 1006 ( 4th DCA 1998)………………………50

*United States v. Kapelushnik,* 306 F.3d 1090, 1093 (11ᵗʰ Cir. 2002)……………14

*United States v. Khanani,* 502 F.3d 1281, 1292 (11ᵗʰ Cir. 2007)……….,,,,,,…….10

*United States v. Langford*, 647 F.3d 1309, 1321 (11th Cir. 2011)…….….…..……3, 33

*United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995)…………..…..…54

*United States v. Martinez*, 825 F.2d 1451, 1452 (10th Cir. 1987)…………………7

*United States v. Mitcheltree*, 940 F.2d 1329, 1334 (10th Cir.1991)………………10

*United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991)……………………8

*United States v. Owens,* 70 F.3d 1118, 1123 (10th Cir. 1995)……………...……6

*United States v. Paz,* 405 F.3d 946, 948 (11ᵗʰ Cir.2005)…………………………14

*United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993)……………..………8

*United States v. Pon*, 963 F. 63 F.3d 1207, 1227 (11th Cir. 2020)…………..……28

*United States v. Pyne*, 151 Fed. Appx 901 ( 11ᵗʰ Cir. 2005)…………………  ….14

*United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993)……………………...6

*United States v. Reese*, 681 Fed. Appx. 846 (11th Cir. 2017)……………..………52

*United States v. Rogers*, 475 F.2d 821, 825 (7th Cir. 1973)…………………………..9

*United States v. Rivera,* 900 F.2d 1462, 1469–70 (10th Cir.1990)………..……...11

*United States v. Ruiz*, 59 3d. 1151, 1154 (11ᵗʰ Cir. 1995)………………………...10

*United States v. Saimiento-Rozo*, 676 F.2d 146, 149 (5th Cir. 1982)………………7

*United States v. Sanders,* 668 F.3d 1298, 1309 ( 11ᵗʰ Cir. .2012)…………..……13

*United States v. Spellissy* (8:05-cr-00475-JDW-TGW)……………..…………….39

*United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021)………..……..……7

*United States v. Sun Gowers of California,* 526 U.S. 398, 119 S. Ct. 1402

(1999)……………………………………………………………….……………..38

*United States v. Teague,* 953 F.2d 1525, 1534–35 (11th Cir.) ………..……… …13

*United States v. Trowery*, 542 F.2d 623, 626 (3d Cir. 1976)……………..……. 7

[*United States v. Young,* 470 U.S. 1, 16–17 n. 14, 105 S.Ct. 1038, 1046–1047 n. 14,

84 L.Ed.2d 1 (1985) ………………………………………………..……….10,11

*Wasko v. Dugger*, 761 F.Supp. 1560 (1991),………………….……..……..…27, 28

*Wiley v. Wainwright,* 793 F.2d 1190, 1193 (11th Cir.1986)), *cert. denied,* ⸺ U.S.

⸺, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992)…………………………….………13

*Yarbourgh v. Gentry*, 540 U.S. 1 (2003)………………………………………48

*Yates v. United States,* 354 U.S. 298 (1957)…………………………………..42

**STATUTES**:

18 U.S.C.A. § 201(b)(1, 2), (c)……………………………..………………38,49

18 U.S.C. § 3231……………………………………………………………*viii*

18 U.S.C. §3146……………………………………………………………42

18 U.S.C. § 3742……………………………………….…….…..*viii*

28 U.S.C. § 1291……………………………………………..…*viii*

**OTHER**:

U.S.C.A. Const. Amend. 6……………………………………………20,21,48

3 C. Wright, Federal Practice and Procedure § 842, at 342-47 (1969)……..…….11

Fed. Rules Evid. Rule 802…………………………………….…………6

Federal Rule 104(a)………………………………………….…………5

Fed. Rules Evid. Rule 801(d)(2)(E), 28 U.S.C.A…………………*ix,*.5,6,7,8,18,19

Fed. R. Crim. P. 52(b)…………………………………….…………10
.
Fla. Stat. §119……………………………………………………34

U.S.S.G. §2C1.1…………………………………………………..53

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant respectfully requests oral argument based upon the complexity of the issues set forth below.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

This document complies with the word limit of FRAP because, excluding the parts of the document exempted by FRAP 32(f), this document contains less than 13000 words.

This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6).

## PRELIMINARY STATEMENT

This is an appeal by the Defendant from the Final Judgment and sentence entered on February 28, 2024 (Doc 139, Judgment in a Criminal Case). The Defendant was not satisfied with the judgment and sentence.

## STATEMENT OF RELATED CASES

NA

## STATEMENT OF JURISDICTION

Under 28 U.S.C. § 1291, the court of appeals has jurisdiction from all final decisions of the district courts of the United States, except where a direct review may be had in the Supreme Court of the United States. Title 18 U.S.C. § 3742 permits a defendant to appeal a sentence that was imposed in violation of law or that was imposed because of an incorrect application of the sentencing guidelines.

The United States District Court, Middle District of Florida, Orange Division, had jurisdiction pursuant to 18 U.S.C. § 3231. The Defendant appeals the final judgment and sentence entered on February 28, 2024 (Doc. 139). The Defendant was not

satisfied with the judgment and sentence. An Amended Notice of Appeal was filed by the Defendant on March 26, 2024 (Doc. 153).

## ISSUE I

**WHETHER THE TRIAL COURT ERRED WHEN IT OVERRULED MULTIPLE HEARSAY OBJECTIONS BASED UPON THE CO-CONSPIRATOR EXCEPTION TO HEARSAY RULE WHEN THE TRIAL COURT FAILED TO MAKE THE REQUIRED FINDINGS AS TO WHETHER A CONSPIRACY HAD ALREADY BEEN ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE AS MANDATED BY FED. .RULES EVID. RULE 801(D)(2)(E), 28 U.S.C.A. RESULTING IN A VIOLATION OF THE CONFRONTATION CLAUSE ?**

## ISSUE II[HF1]

**WHETHER THE TRIAL COURT ERRED BY NOT STRIKING THE TESTIMONY OF AN ALLEGED CO-CONSPIRATOR (ELLICOTT) BASED UPON ELLICOTT TAKING THE FIFTH AMENDMENT REGARDING HIS INVOLVEMENT IN SEX TRAFFICKING DURING CROSS EXAMINATION WHEN IN DIRECT TESTIMONY ELLICOTT ACKNOWLEDGED HIS INVOLVEMENT IN SEX TRAFFICKING AND BY DENYING A JURY INSTRUCTION ALLOWING A NEGATIVE**

INFERENCE ON ELLICOTT'S TESTIMONY BASED UPON THE ELLICOTT'S REFUSAL TO ANSWER?

## ISSUE III

WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO FOLLOW CASE LAW WHICH HOLDS AGAINST CRIMINALIZING CIVIL MATTERS AND FEDERALIZING STATE MATTERS?

**ISSUE IV**

WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT MOTION FOR ACQUITTAL BASED ON INSUFFICIENCY OF THE EVIDENCE?

## ISSUE V

WHETHER THE TRIAL COURT ERRED BY ISSUING IMPROVISED JURY INSTRUCTIONS AND FAILING TO INSTRUCT THE JURY ABOUT THE LESSER INCLUDED OFFENSE OF UNLAWFUL GRATUITY ?

## ISSUE VI

WHETHER THE APPELLANT' S COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO A PLETHORA OF LEADING QUESTIONS THAT ALLOWED THE GOVERNMENT TO INTRODUCE THROUGH TESTIMONY THE ONLY EVIDENCE AT TRIAL THAT

COULD SUPPORT THE CHARGE OF CONSPIRACY AND WHETHER APPELLANT'S TRIAL COUNSEL ERRED FOR FAILING TO ARGUE FOR THE LESSER INCLUDED OFFENSE OF UNLAWFUL GRATUITY AS A JURY INSTRUCTION AND/OR INCLUDING THE ARGUMENT REGARDING UNLAWFUL GRATUITY WITHIN THEIR ARGUMENT FOR MOTION FOR ACQUITTAL?

### ISSUE VII

WHETHER THE TRIAL COURT ERRED WHEN THE TRIAL COURT RULED THAT THE DEFENDANT WAS A PUBLIC OFFICIAL FOR SENTENCING PURPOSES RESULTING IN A FOUR LEVEL ENHANCEMENT AND WHEN THE TRIAL COURT AGREED WITH A FOURTEEN LEVEL INCREASE OF THE OFFENSIVE LEVEL BASED UPON A MISCALCULATION OF THE LOSS AMOUNT?

**STATEMENT OF THE CASE**

**a.    Course of proceeding and disposition in the court below:**

On August 10th, 2022, a five-count Indictment (Doc. 1) was filed in this matter naming the Appellant, Michael Courtney Shirley, as the sole defendant who was charged in Count I (Conspiracy to Commit Honest Services Fraud) and Counts II-V (Honest Services Fraud).

A four-day trial ensued from July 24-July 27, 2023, (Doc. 71,72,74,77).

A jury verdict finding Mr. Shirley guilty on all counts was rendered on July 27, 2023 (Doc. 83).

After a two-day sentencing hearing, a Final Judgment was entered sentencing Mr. Shirley to (87 months in Bureau of Prisons BOP) (Doc. 134 and 139). Mr. Shirley surrendered on April 22nd, 2024, and is currently incarcerated at FCI Miami.

A timely notice of appeal was filed on March 7, 2024 (Doc. 144 and Amended Notice of Appeal was filed on March 26, 2024 (Doc. 153)

**STATEMENT OF FACTS**

Mr. Shirley was the campaign manager for Joel Greenberg, who was elected the Tax Collector for Seminole County, Florida, in 2016, and who left office in 2020. In January 2017, Mr. Shirley's company, Praetorian Integrated Services, and the Seminole County Florida Tax Collector's Office entered into a standard-form contract that was drafted by an independent attorney unaffiliated with Mr. Shirley.

1

Praetorian delivered the contracted-for goods and services, and disinterested third-party non-political employees approved, processed, and paid Praetorian's invoices. Mr. Shirley was indicted on August 10, 2022, (Doc 1). The Public Official identified in the Indictment, Joel Greenberg, purportedly took "favorable official action" to benefit Mr. Shirley and Praetorian based upon a purported bribe. (Doc 1, pg. 3). The Indictment specified that alleged co-conspirator, Joseph Ellicott, accepted a "kickback" for Greenberg from Mr. Shirley, under a "false cover story … when, in truth and in fact, as … the co-conspirator then and there well knew, the only purpose of the false cover story was to conceal that the cash was a bribe and kickback to the Public Official in exchange for receiving favorable official action" (Doc 1, pg. 4). Before trial, the Defense moved to dismiss the Indictment  (Doc. 45) based in part on the holdings in *Ciminelli v. United States* 143 S. Ct. 1121 (2023) and *Percoco v. United States*, 143 S. Ct. 1130 (2023), both of which were decided after the Indictment. The Trial Court denied the motion without addressing *Ciminelli* (Doc. 54).

During the trial, the Government declined to call Greenberg (the main alleged co-conspirator and Public Official) despite having him in custody in the Bureau of Prisons. No evidence was introduced that Greenberg ever took any official action or made any official decision, much less one that improperly benefited Mr. Shirley based upon a bribe.

During the trial, the Government introduced co-conspirator hearsay evidence to try an establish a conspiracy between Mr. Shirley, Greenberg and Ellicott; however, said evidence was exclusively based upon improper hearsay testimony from Ellicott regarding what Greenberg allegedly said to him. The hearsay testimony was objected to at numerous points throughout Ellicott's testimony (Doc. 119 pg. 250 ln 8, 22), Doc. 119 pg. 260 ln. 18-19), (Doc. 119 pg. 261 ln. 3), (Doc. 119 pg. 272 ln 17), (Doc. 119 pg. 273 ln. 60). Over objection, the Court improperly allowed the hearsay testimony to be allowed to be introduced into evidence. Also, objections to the violation of the confrontation clause, in conjunction with the hearsay objections, were made at (Doc. 119 pg. 251, 263 and 273).

During Ellicott's testimony on direct examination, the Government introduced, an admittedly doctored, document purportedly establishing a link to Mr. Greenberg. The Defense moved for a mistrial, which was denied (Doc 119, pp. 257-260).

During Ellicott's testimony on direct examination, the Government asked Ellicott if he had provided information on the sex trafficking of a 17-year-old minor and Ellicott responded affirmatively to the question (Doc 119 pg. 268 ln. 20-23). During cross-examination, Ellicott was questioned regarding the same issue of sex trafficking with a 17-year-old (which the Government had opened the door to) at (Doc. 120 pg. 17), Ellicott responded to every cross-examination question involving

not just the 17-year-old, but also his sexual activity involving adults being trafficked, by pleading the fifth amendment over sixty (60) times (Doc. 120 pgs. 17-50). The Defense moved that Ellicott be stricken as a witness. The Trial Court denied that motion (Doc, 120 p. 66, lines 12-25). The Defense requested a negative inference jury instruction (Doc. 75) regarding Ellicott's refusal to answer questions under the Fifth Amendment. The Trial Court denied that request. (Doc. 122 pp. 8-9).

Given the insufficiency of the evidence, the Defense moved for a Judgment of Acquittal in part because of insufficiency of the evidence (Doc. 120, pp. 206-209). The Court denied the motion (Doc, 120, p. 210, line 14). The Defense immediately rested and renewed its motion for acquittal (Doc 120, p. 213), which the Trial Court again denied.

The Defense objected to the Government's improvised jury instructions, particularly the attempt to make Mr. Shirley a "public official" post-*Percoco*. Instruction 15, deviated substantially from the Indictment and the pattern instructions. The Trial Court overruled all of Mr. Shirley's objections to Instruction 15, because Honest Services Fraud requires a clearly defined public official to take an action that deprives the public of honest services, Instruction 14, was also implicated.

4

The Government changed its theory in its rebuttal to Shirley's objection by making Mr. Shirley the purported public official with a duty of honest services (Doc 122 p. 105, lines 11-12). When the Defense objected, the Trial Court responded, "whatever your motion is, it's denied" (Doc 122 p. 105, line 113).

The Defense renewed its motion for acquittal a second time (Doc 94), which the Trial Court again denied.

At sentencing, Mr. Shirley was enhanced  four levels because he was deemed a 'Public Official' (Doc. 45, paragraph 43). The Defense argued Mr. Shirley was an independent contractor and not an employee. The Trial Court responded, "consultant as opposed to employee, to me, is not a legal distinction" (Doc 158 p. 67, lines 14-15), ruling that Mr. Shirley was a public official. (*Id*, lines 20-22).

Also, at sentencing the trial court overruled the objection to  the loss amount calculation  set forth in Mr. Shirley Sentencing Memorandum (Doc. 126 pg.5 Pr C).

## STANDARD OF REVIEWS

**Coconspirator  Hearsay:**

a)      When the preliminary facts relevant to Rule 801(d)(2)(E)—the existence of a conspiracy and the non-offering party's involvement in it—are disputed, the offering party must prove them by a preponderance of the evidence, not some higher standard of *172* proof. Rule of Evidence 104(a) requires that the court determine preliminary questions concerning the admissibility of evidence, but

the Rules do not define the standard of proof. The traditional requirement that such questions be established by **2777* a preponderance of proof, regardless of the burden of proof on the substantive issues, applies here. Pp. 2778–2779. See *Bourjaily v. U. S.* 483, U. S. 171 (1987) .

b) Standard of Review for this Issue is set forth in *United States v. DaVita Inc*. 592 F. Supp.3d 970 (2022):

"Hearsay is generally inadmissible. Fed. R. Evid. 802. Statements by a party's co-conspirator made "during and in furtherance of the conspiracy" are excluded from the definition of hearsay and admissible against all co-conspirators. Fed. R. Evid. 801(d)(2)(E). Before statements may be admitted under this rule, the district court "must determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). The trial court must state its findings on the elements of the co-conspirator exception. *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017) (citing *United States v. Rascon*, 8 F.3d 1537, 1541 (10th Cir. 1993)). See *80* 3A district court's preliminary conclusion that the predicate conspiracy existed, as required to support admission of co-conspirator statements as non-hearsay, must be supported by some independent evidence of the conspiracy other than the proffered co-conspirator statements

6

themselves, although such independent evidence need not be substantial. *United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021). The Tenth Circuit has defined "independent evidence" as simply "evidence other than the proffered [co-conspirator] statement itself." *United States v. Martinez*, 825 F.2d 1451, 1452 (10th Cir. 1987). In addition, the Tenth Circuit has held that a co-conspirator's testimony regarding her "direct observations and contacts with defendant" qualifies as independent evidence. *United States v. Hernandez*, 829 F.2d 988, 995 (10th Cir. 1987); *see also United States v. Doran*, 882 F.2d 1511, 1526 (10th Cir. 1989).

Most circuits have held that "conspiracy" as a matter of substantive criminal law is different from "conspiracy" as part of the Rule 801 evidentiary principle. *See United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979); *United States v. Trowery*, 542 F.2d 623, 626 (3d Cir. 1976). The rationale of the co-conspirator exception to the hearsay rule "is the common sense appreciation that a person who has authorized another to speak or to act to some joint end will be held responsible for what is later said or done by his agent, whether in his presence or not." *Trowery*, 542 F.2d at 626. To be admissible under Fed. R. Evid. 801(d)(2)(E), the conspiracy at issue need not be charged and need not even be criminal.[1] *United States v. Saimiento-Rozo*, 676 F.2d 146, 149 (5th Cir. 1982).

The requirements for being a co-conspirator for purposes of Rule 801(d)(2)(E)801(d)(2)(E) are likewise not the same as in a substantive criminal

context. Co-conspirators for Rule 801(d)(2)(E) purposes need only be engaged in the same common plan or joint enterprise. *See* § 6778 Conspirator Statements (Rule 801(d)(2)(E))—Membership in a "Conspiracy", 30B Fed. Prac. & Proc. Evid. (2021 ed.). In determining whether a conspiracy exists, there must also be some independent evidence that the declarant was a member of the conspiracy, though that evidence need not be substantial. *Alcorta*, 853 F.3d at 1142.

The in-furtherance requirement of Rule 801(d)(2)(E) "embodies the drafters' desire to strike a balance between the great need for conspirators' statements in combating undesirable criminal activity which is inherently secretive and difficult to prove, and the need to protect the accused against idle chatter of criminal partners as well as inadvertently misreported and deliberately fabricated evidence." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (internal quotation marks omitted). "When inquiring whether a statement was made 'in furtherance of' a conspiracy, we do not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *Id.* (quoting *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991)). Examples of statements that could **\*981** satisfy the "in furtherance" requirement include [S]tatements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence;

statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities.

**Motion to Dismiss**: Appellant along with all of the other defendants filed a timely Motion to Dismiss which presented the grounds urged in this appeal; therefore, the suppression issue is preserved for review on appeal. *United States v. Hopkins,* 433 F.2d 1041, 1044 (5th Cir. 1970):

> " A more serious question exists with respect to the statement Hopkins made to Dallas Police Detective Hobbs. The Government, however, insists that Hopkins may not raise this issue on appeal because he failed to raise a timely objection at trial. While there may be some ambiguity, it appears that prior to trial Hopkins filed a motion to suppress both the statement made to Agent Hanley and the statement made to Detective Hobbs. Even though Hopkins' counsel failed to object again to the admission of Hobbs' statement at trial, we hold that his pre-trial motion was sufficient to preserve this issue on appeal. See 3 C. Wright, Federal Practice and Procedure § 842, at 342-47 (1969). "

See. *United States v. Rogers*, 475 F.2d 821, 825 (7th Cir. 1973) (failure to renew objection at trial, raised in pretrial motion to suppress, does not waive right to raise on appeal the pretrial objection).

A district court's denial of a motion to dismiss is reviewed under a mixed standard: we review the district court's findings of fact under the clearly erroneous standard and the district court's application of law to those facts *de novo. United States v. Gil,* 204 F.3d 1347, 1350 (11th Cir.2000).

**Issues on Appeal that involve due process regarding the entry and/or denial of evidence:** The court's entry of questionable evidence is reviewed for abuse of

discretion. See *Mercado v. City of Orlando,* 407 F.3d 1152, 1161 (11th Cir. 2005). In that case, hearsay was at issue. If an evidentiary ruling is erroneous, it would be reversed only if there was no harmless error. See. *United States v. Hands, 184* F.3d1322, 1329 (11th Cir. 1999). The Court is required to examine the entire record, comparing the error(s) with the strength of the evidence of the defendant's guilt to determine whether an error had a substantial influence on the outcome. See. *United States v. Khanani,* 502 F.3d 1281, 1292 (11th Cir. 2007).

- **Request for Jury Instruction:** A denial of a requested jury instruction is reversible only if: the request is correct; it is not substantially covered by another instruction that was delivered, and if it dealt with a point that is vital that the failure changes the defendant's ability to defend. See *United States v. Ruiz*, 59 3d. 1151, 1154 (11th Cir. 1995).

- **Confrontation Clause:** To constitute plain error under the Confrontation Clause, the *constitutional* error must be (1) obvious, and (2) "affect[ ] substantial rights." Fed.R.Crim.P. 52(b). The Tenth Circuit stated the rule succinctly in *United States v. Mitcheltree*, 940 F.2d 1329, 1334 (10th Cir.1991):

- "To find reversible plain error, we must be satisfied that the error not only affected substantial rights in a serious way, but also that the "error had an unfair prejudicial impact on the jury's deliberations." [*United States v. Young,*

10

470 U.S. 1, 16–17 n. 14, 105 S.Ct. 1038, 1046–1047 n. 14, 84 L.Ed.2d 1 (1985) ]. "Only then would a court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice." *Id.* ...

- An error of constitutional significance may be "noticed more freely than less serious errors." *See* 3A C. Wright, *Federal Practice & Procedure* § 856 at 336, 342 (1982 & 1990 Supp.); *Jefferson,* 925 F.2d at 1254. Notwithstanding, many constitutional errors are "not prejudicial per se." 8B J. Moore, *Moore's Federal Practice* ¶ 52.03 (1990). Rather, under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), many constitutional errors may be deemed harmless and not reversible when a reviewing court is "able to declare a belief that it was harmless beyond a reasonable doubt." *See also United States v. Rivera,* 900 F.2d 1462, 1469–70 (10th Cir.1990) (en banc) (discussing differing standards of review for unconstitutional and constitutional claims).

*Id.* (footnote omitted).

Insufficiency of the evidence: We review *de novo* the denial of a motion for judgment of acquittal. *United States v. Bowman,* 302 F.3d 1228, 1237 (11ᵗʰ Cir. 2002). "When the motion raises a challenge to the sufficiency of the evidence, we review the sufficiency of the evidence *de novo,* drawing all reasonable inferences in

the government's favor." *Id.* We review the denial of a motion for a new trial for abuse of discretion. *Butcher v. United States,* 368 F.3d 1290, 1297 (11ᵗʰ Cir. .2004). Jury Instructions:  [W]e review jury instructions *de novo* to determine whether they misstate the law or mislead the jury." *Caradigm USA LLC v. PruittHealth, Inc.*, 964 F.3d 1259, 1277 n.12 (11th Cir. 2020) (quoting *Gowski v. Peake*, 682 F.3d 1299, 1310 (11th Cir. 2012)). As to the phrasing of jury instructions, we review for an abuse of discretion, recognizing that district courts have "wide discretion as to the style and wording employed" in their instructions. *Id.*; *accord Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999). "If the district court errs in its jury instructions, we will 'consider the jury instructions *\*1280* as a whole' to determine whether the error was reversible and 'will not overturn a jury verdict because of an erroneous jury instruction unless there is also a showing of prejudice.' " *Caradigm*, 964 F.3d at 1277 n.12 (quoting *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1295–96 (11th Cir. 2000)); *accord MidlevelU, Inc. v. ACI Info. Grp.*, 989 F.3d 1205, 1215 (11th Cir. 2021); *Conroy v. Abraham Chevrolet-Tampa, Inc.*, 375 F.3d 1228, 1233 (11th Cir. 2004). wording employed" in their instructions. *Id.*; *accord Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 1999).

Finally, Appellant argues that the District Court's instructions constructively amended the indictment. "A constructive amendment to the indictment occurs where the jury instructions modify the elements of the offense charged that the defendant

may have been convicted on a ground not alleged by the grand jury's indictment."

*United States v. Sanders,* 668 F.3d 1298, 1309 (11th Cir. 2012) (internal quotation marks omitted). We review whether jury instructions constructively amended the indictment *de novo. Id.* n. 9.

**Failure of Court to include a lesser included offense when the Defense Counsel did not request the lesser included offense:**

*United States v. Langford,* 647 F.3d 1309, 1325 n. 11 (11th Cir. 2011). Under this standard, we will not correct an error raised for the first time on appeal unless there is (1) error, (2) that is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.

**Ineffective assistance of counsel**: : On the ineffective assistance of counsel claim, we " 'defer to the district court's findings of fact absent a clearly erroneous determination but apply our own judgment as to whether the conduct determined by these facts constitutes ineffective assistance of counsel.' " *United States v. Teague,* 953 F.2d 1525, 1534–35 (11th Cir.) (quoting *Wiley v. Wainwright,* 793 F.2d 1190, 1193 (11th Cir.1986)), *cert. denied,* ___ U.S. ___, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992). See *United States v. Camacho,* 40 F.3d 349 (11th Cir. 1994)

**Sentencing error**: "Because Pyne timely raised his *Blakely* objection in district court, we review his *Booker* challenge to his sentence *de novo,* reversing if the

government fails to show ***905** that any error was harmless. *See United States v. Paz, 405 F.3d 946, 948 (11th Cir.2005).*

When reviewing a downward departure under the Sentencing Guidelines, we review factual findings for clear error and the application of the Guidelines to those facts *de novo. United States v. Kapelushnik,* 306 F.3d 1090, 1093 (11th Cir.2002). If there is a legal basis for the downward departure under the Guidelines , we generally do not review the district court's exercise of discretion in determining the extent of the departure. *United States v. Head,* 178 F.3d 1205, 1206 n. 3 (11th Cir.1999)." See *United States v. Pyne*, 151 Fed. Appx 901 (11th Cir. 2005).

**ISSUE I:**

## SUMMARY OF ARGUMENTS

The crux of the Government's case against Mr. Shirley as set forth in the Indictment, was based upon Mr. Shirley allegedly agreeing to pay bribes and kickbacks to a Public Official "(Greenberg) (Doc. 1). However, it is a fact that on January 3, 2017, Shirley's company Praetorian Integrated Services ( Praetorian), entered into a legal consulting and vendor service contract with the Seminole County Tax Collector Office, which was drafted by Wade Vose, an attorney working for the Tax Collector's office. The terms of the contract were that Praetorian was to be paid $12,500.00 a month ( $150,000.00 a year) (Doc. 119 pg. 20) for consulting services and additionally paid markup fees and costs related to vendor deliverables.

It is a fact, that the Indictment in paragraph 5(c) asserts that Mr. Shirley agreed to pay *multiple* "bribes' ' and kickbacks" to Greenberg in exchange for receiving favorable official action by Greenberg. (Doc 1 pg. 3). It is a fact that the Government only tried to produce evidence of a single alleged bribe, and not multiple bribes. The alleged bribe that the Government attempted to prove, was for the alleged payment of $6,000.00, which allegedly took place on September 25, 2017, nine months after Praetorian had started operating pursuant to their service contract with the Tax Collector's Office. No other alleged bribes were offered as evidence between

15

Greenberg and Mr. Shirley from 2016-2020. No evidence was introduced that the cash that Mr. Shirley gave Mr. Ellicott was ever given to Mr. Greenberg.

The only way the Government could establish their theory of the case without Greenberg testifying, was through the introduction of Greenberg's alleged statements made to Ellicott. The trial court erred in allowing the hearsay statement to come into evidence, because the trial court did not receive any former evidence establishing a co-conspiracy between Mr. Shirley and Ellicott or Greenberg as a prerequisite before allowing the Government to introduce the co-conspirator hearsay testimony of Greenberg, through Ellicott's testimony. Therefore, the statements of Ellicott do not meet the three requirements for admission under Rule 801(d)(2)(E) and are not admissible as a co-conspirator statement.

Furthermore, the hearsay statements themselves contradict Count One of the Indictment, as Ellicott repeatedly testified that the payment was a "loan" to Greenberg, not a "bribe" or "kickback" (Doc 119, p. 250, line 20; p. 264, line 10; p. 269, line 14; p. 270; line 3). When the Government attempted to rehabilitate Ellicott, his testimony still contradicted Count One. Ellicott testified he only came to believe that a purported kickback was involved after he "saw evidence in the course [of his prosecution for sex with a minor] that made me think it was [a kickback]" (Doc 119 p.270, lines 12-16).

16

## ARGUMENT

Before Ellicott was called to testify, the Government called eight witnesses, Dana Murphy, an accountant and current employee for the Seminole County Tax Collector' office, (Doc. 119 pg. 50-83) who was employed at the Seminole County Office during Greenberg's tenure as the Tax Collector. Jade Ramos, a former employee, left the Tax Collector's Office in June 2017, and  worked for Greenberg during his tenure as Tax Collector (Doc. 119 pg. 83-96). Sandra Sumner, former  accountant  for the  Seminole  County  Tax  Collector' office, who was employed in August 2017 at the Seminole County Office during Greenberg's tenure as the Tax Collector (Doc. 119 pg. 98-142). Elaine Sarlo, who worked for Mr. Shirley's Company, Praetorian from 2016 through 2017 (Doc 119 pg. 156-169) Abigail Hirn, who testified she worked for Mr. Shirley's companies'  Praetorian and Emerging Horizon Group in 2017  (Doc. 119 pg. 156-169) Jason Ross, who testified he was a subcontractor to his customer Praetorian in 2016-2017 (Doc. 119 pg. 171-216). Lastly, Alexis Brignobi, who is an FBI agent who testified to text messages between Mr. Shirley, Ellicott and Greenberg (Doc. 119 pg. 223-238). The testimony of the above list witnesses did not establish a conspiracy by a preponderance of the evidence as charged in the Indictment (Doc. 119 pgs. 147-239).

Before admitting a co-conspirator's statement over an objection that it does not qualify under Rule 801(d)(2)(E), a court must be satisfied that the statement actually falls within the definition of the Rule. There must be a preponderance of evidence that there was a conspiracy involving the declarant and the non-offering party, and that the statement was made "during the course and in furtherance of the conspiracy." *Bourjaily v. United States,* 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987). The offering party must prove these preliminary facts by a preponderance of the evidence. *See id.* at 176, 107 S.Ct. at 2779. See *Bourjaily v. U. S.* 483, U. S. 171 (1987).

A Defendant's failure to request findings as to whether child's statements admitted under co-conspirator exception to hearsay rule were made during the course of or in furtherance of conspiracy did not bar him from raising on appeal failure of district court to make such findings. Fed.Rules Evid.Rule 801(d)(2)(E), 28 U.S.C.A. See *Bourjaily v. U. S.* 483, U. S. 171 (1987) .

A Defendant who makes a hearsay objection to statements admitted under a co-conspirator exception to hearsay rule, has done all he needs to preserve for appeal a district court's failure to make required findings as to whether statements were made during the course of or in furtherance of conspiracy; duty to request requisite finding is properly placed on government. Fed.Rules Evid.Rule 801(d)(2)(E), 28 U.S.C.A. See *Bourjaily v. U. S.* 483, U. S. 171 (1987).

The court erred by not making findings on the record that there had been established by a preponderance of evidence that a conspiracy existed before allowing a co-conspirator hearsay testimony (Ellicott's) into evidence the pursuant requirements of Fed.Rules Evid.Rule 801(d)(2)(E), 28 U.S.C.A.

Further, the trial court could not have honestly found that a conspiracy even existed even based upon preponderance of the evidence, because the evidence that was introduced prior to Ellicott's testimony did not supply a basis for a finding that a conspiracy existed. The evidence introduced before Ellicott's testimony only set the taught the jury that Mr. Shirley and his company Praetorian, were hired to provide consulting and vendor services to the Tax Collector's Office for a valid contract fee of $12,5000.00 a month. The fee amount is not evidence of a crime or a conspiracy. The term "fees" in the contract is clearly separate from, and in addition to, "costs" of third-party goods and services. If the trial court considered that the "fees" to Mr. Shirley are excessive, then they are clearly engaging in precisely what the Supreme Court has admonished against, namely "criminaliz[ing] traditionally civil matters and federaliz[ing] traditionally state matters." *Ciminelli v. United States* 598 U.S. 306 (2023). The appropriateness of the markup fees is a state contract law, not federal criminal law, matter. A review of text messages only established that Grenberg, Shirley and Ellicott had cell phones and knew each

19

other's cell phone number (text messages between Mr. Shirley, Ellicott and Greenberg (Doc. 119 pg. 223-238).

Furthermore, the hearsay statements themselves contradict Count One of the Indictment, as Ellicott repeatedly testified that the payment was a "loan" to Greenberg, not a "bribe" or "kickback" (Doc 119, p. 250, line 20, hearsay statement that Greenberg claimed it was a "loan"; p. 264, line 10; p. 269, line 14, hearsay statement that Shirley said it was a "loan"; p. 270; line 3, Ellicott testifies that his contemporaneous understanding was that the payment was a "loan"). When the Government attempted to rehabilitate Ellicott, his testimony still contradicted Count One. Ellicott testified he only came to believe that a purported kickback was involved after he "saw evidence in the course [of his prosecution for sex with a minor] that made me think it was [a kickbackFF F]" (Doc 119 p.270, lines 12-16). The consequence of the trial court's error in allowing Ellicott to testify regarding Greenberg's statement to him denied Mr. Shirley the opportunity to confront and cross examine Greenberg about his alleged statement to Ellicott and thus a violation of Mr. Shirley's right to confront and cross examine Greenberg.

The Confrontation Clause provides that the "accused has the right to confront and cross-examine witnesses against him, applies not only to in-court testimony, but also to out-of-court statements introduced at trial, regardless of admissibility of

statements under law of evidence. <u>U.S.C.A. Const.Amend. 6</u>." See *Crawford v. Washington* 541 U.S. 36, 50-51 (2004) (internal citations omitted).

**ISSUE II:**

## SUMMARY OF THE ARGUMENT

The alleged conspirators' repeated refusal to answer questions on cross-examination based upon reliance on privilege against self-incrimination violated Mr. Shirley's Sixth Amendment right to confront witnesses. Further, Mr. Shirley was improperly denied a jury instruction of negative inference based on Ellicott's refusal to testify.

## ARGUMENT

Ellicott repeatedly "pled the Fifth" regarding his illegal sexual activity with a minor, his financial distress resulting from payments to the minor as well as adult prostitutes. Mr. Shirley was thus denied his Sixth Amendment Shirley's confrontation right, and the defense moved to strike him as a witness and dismiss the case (Doc 120, p. 66, lines 12-25), which the trial court erroneously denied. During Ellicott's testimony on direct questioning the Government asked Ellicott if he provided information on the sex trafficking of a 17-year-old minor and Ellicott responded positively to the question (Doc 119 pg. 268 ln. 2023). During cross-examination, when Ellicott was questioned regarding the issue of sex trafficking a 17-year-old (which the Government had opened the door to) at (Doc. 120 pg. 17),

Ellicott responded to every cross-examination question involving either the minor or adult prostitutes, by pleading the fifth amendment over sixty (60) times (Doc. 120 pgs. 17-50).

A "defendant's inability to cross-examine witness who had been convicted for the same crime and who refused, while acting in his own interests to answer any questions in reliance on privilege against self-incrimination as to witness alleged confession which implicated defendant and which was read to jury by prosecutor under guise of cross-examination after witness had claimed privilege, constituted a denial of defendant's right of cross-examination secured by Confrontation Clause of the Sixth Amendment. U.S.C.A.Const. Amend. 6." See *Douglas v. State of Alabama,* 380 U. S. 415 (1965).

The Government's argument materially misstates the sequence of events between Ellicott and Shirley. The contract was presented first, and then cash was exchanged, however, the Government falsely claims Ellicott received cash before the contract was presented (Tr.Doc 7, pp.20-21). This chronology is contradicted by the Government's own recitation of the facts (Tr.Doc 7, p. 6) as well as record (Tr.Doc 119, p.255, lines 1-3; p.263, lines 19-23; p.269 line 12-p.270 line 24; p.60, lines 4-), including the Government's opening argument (Tr.Doc 119, pp.19-20). This sequence is critical because Ellicott testified that, contemporaneously, he didn't believe that anything was wrong with the transaction

```
Q. Mr. Ellicott, [when] time you met up with
Mr. Shirley and received the cash, you didn't know that that
was wrong. ...

A. At the time, no.

...

Q. ... [I]t wasn't until you got more information that
you realized that it was wrong. ...
A. Yes.
Q. That information involved the Government providing you
information of you sex trafficking a minor?
A. Plead the Fifth.
```
(Tr.Doc 120, p.33, lines 21-- p.34, line 8)


and his contemporaneous belief was that the payment was a loan

```
Q. Now, directing your attention back to September 2017.
When you received the cash payment from Shirley, did you
believe that that payment was a loan?
A. When I received it, I did, yes.
Q. But now?
A. But I do not believe that now.
Q. Why not?
A. Just things I've seen with --
...
THE WITNESS: I know it -- *I know what I was told*.
```
*Id*., p. 269, lines 11-21, *emphasis added*)

In that last statement, Ellicott essentially confirms the Defense theory that he was

fed the Government's narrative and changed his belief because he "saw evidence in

the course [of his prosecution for sex with a minor] that made me think it was [a

kickback]" (Tr.Doc 119 p.270, lines 12-16).

The Indictment, however, states Ellicott "then and there well knew, the only

purpose of the false cover story was to conceal that the cash was a bribe and kickback

to the Public Official in exchange for receiving favorable official action" (Tr.Doc 1, p.4).

Not only does Ellicott's testimony directly contradict the indictment, but at the moment he received the cash, he didn't think anything was wrong, then the contract handed to him prior cannot be the reason he believed something was wrong. Ellicott developed a "different understanding" (Doc 119, p.270) of the transaction only after he was under investigation for having sex with a minor. Because Ellicott repeatedly "pled the Fifth" regarding his illegal sexual activity with a minor and with adult prostitutes and his financial distress caused by payments to those prostitutes, not only was Mr. Shirley was denied his Sixth Amendment right to confrontation, but also the defense was denied the ability to demonstrate that it was Ellicott and not Greenberg that needed a loan. The Defense moved to strike Ellicott as a witness and dismiss the case (Doc 120, p.66, lines 12-25), which the Trial Court erroneously denied.

From the beginning, Shirley maintained that Ellicott's involvement with Greenberg in the sex trafficking of a minor was "inextricably tied up" (Tr.Doc 157, p.18, line 5) with the Defense theory being that Ellicott lied to avoid a "10 years to life" charge (*Id*. Line 17) and that the money from Shirley was in fact a loan to Ellicott because he was broke from spending so much money paying multiple women, including a minor, for sex.

24

The Trial Court erred in holding that the sex trafficking of a minor was a "narrow issue [which did affect Shirley's] charges" (Tr.Doc 108 at 11). Shirley was repeatedly denied the opportunity to explore how much Ellicott's expenditures on prostitution and sex trafficking were causing financial strain.

```
Q. In addition to having sex with this minor, you were also
engaging in commercial sex with other women who were adults,
correct?
A. I plead the Fifth.
Q. You were paying other adult women for sex?
A. Plead the Fifth.
Q. How many women have you paid for sex?
A. Plead the Fifth.
Q. Do you intend to plead the Fifth on any questions
involving paying women for sex?
A. Yes.
(Tr.Doc 120, p.20, lines 3-13)
```

Ellicott refused to directly answer questions about whether his testimony was in exchange for dropping sex trafficking charges.

```
Q. Okay. And isn't it true the reason that you signed that
and waived indictment and agreed to be charged by information
is because the the Government agreed not to charge you with sex
trafficking of a minor?
A. I plead the Fifth.
(Tr.Doc 120, p.21, lines 15-19)
```

Shirley was able, however, to establish that Ellicott was so broke that he asked to borrow $180 dollars from Shirley to rent a U-haul. (*Id*., p.34, lines 6-16).

Ellicott's timing of his change in belief about the Shirley loan is entirely consistent with his highly limited testimony. Ellicott also said, "I know what I was told"

(Tr.Doc 119, p. 269, Line 21), presumably by prosecutors investigating him for sex trafficking.

The Defense cited *United States ex rel. DRC, Inc. v. Custer Battles, LLC*, 415 F. Supp.2d 628 (2006), as justification for its proposed jury instruction (Doc 75, p.1). While the court acknowledged familiarity with the "concept in civil cases" (Doc 122, p.8, line 24), the trial court improperly inverted the logic behind the proposed instruction. In *DRC*, the defendant invoked the Fifth Amendment, and yet a jury instruction allowing a negative inference was proper. (*Id.* at 636). The defendant's liberty was not at risk in *DRC*, however, here the Government's star witness invoked the Fifth Amendment sixty-two times. Ellicott's liberty was not at risk, but Mr. Shirley's liberty was at risk and significantly imperiled by an inability to properly confront Ellicott or his hearsay testimony regarding Greenberg. The trial court compounded its Confrontation Clause error by rejecting the proposed jury instruction that would have allowed the jury to make a negative inference regarding Ellicott's testimony.

In *Milton v. State*, 993 So.2d 1047 (2008), the District Court of Appeal of Florida, encountering a similar situation where a previously convicted co-Defendant refused to testify, noted that:

> The Supreme Court has held that a defendant's inability to cross-examine a witness constitutes a denial of his constitutional right to confront witnesses. *Douglas v. Alabama*, 380 U.S. 415 (1965). In *Douglas*, a witness, who had been convicted for the same crime as the defendant and who refused to answer

any questions based on his constitutional privilege against self-incrimination, was asked about his alleged confession which had implicated the defendant. …

> This case cannot be characterized as one where the prejudice in the denial of the right cross-examination constituted a mere minor lapse. The alleged statements clearly bore on a fundamental part of the State's case against the petitioner. *The circumstances are therefore such that* inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant.

*Douglas,* 380 U.S. at 419-420[; *see also Bruton v. United States,* 391 U.S. 123, 127 (1968).]

> *The crux of a Bruton violation is the introduction of statements which incriminate an accused without affording him an opportunity to cross-examine the declarant.*

(Emphasis added).
*Milton* at 1048-49.

Shirley's inability to fully cross-examine Ellicott or Greenberg regarding Ellicott's

hearsay presents the same constitutional problems found in *Douglas* and *Bruton*.

Just like Ellicott's sex trafficking charges were dropped in exchange for his

implicating Mr. Shirley, in *Wasko v. Dugger*, 761 F. Supp. 1560 (1991), the co-

Defendant

> had sexually abused other children, had raped his ex-fiancée, and had been charged with sexual battery[, but] but the trial court refused to allow [Defendant] to elicit that [co-Defendant] had pled guilty to [a] lesser offense [unrelated sex-crime charges] had been dismissed, and that he had agreed to testify for the prosecution if necessary.

*Wasko* at 1562. That court held that the Defendant:

27

was entirely precluded from making a record from which he could argue that [co-defendant separately convinced] was biased and was lying about [Defendant's] involvement to please the prosecution. He could not elicit testimony that [co-Defendant] had pled to a lesser charge, that other serious charges were dropped … and that he had agreed to testify if necessary.

Allowing [Defendant] to impeach [co-Defendant] by other means simply does not cure this clear constitutional violation. Though the jury may have had sufficient facts to judge generally [co-Defendant's] credibility, they had no basis from which to conclude that [co-Defendant] had reason to falsely implicate [Defendant]. Had [Defendant] been permitted to inquire into the terms of the plea agreement, the jury certainly would have had a significantly different impression of the credibility of the claim that [Defendant] committed the crime. The trial judge's prohibition of this cross-examination was an error of constitutional magnitude.

*Wasko* at 1568. Although *Wasko* ultimately found the constitutional violation harmless, the same analysis applying *Chapman v. California*, 386 U.S. 18 (1967), *Delaware v. Van Arsdall*, 106 S.Ct. at 1431, 1438 (1986), and *Coy v. Iowa*, 487 U.S. 1012 (1989) to Mr. Shirley's case would conclude that the trial court's error regarding Ellicott's testimony was far from harmless. To demonstrate the harmlessness of a constitutional error, the burden is on the Government to prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Pon*, 963 F.3d 1207, 1227 (11th Cir. 2020)

The Trial Court's rejection of the requested instruction regarding Ellicott's repeated invocations of the Fifth Amendment was separately erroneous because the instruction "(1) was correct, (2) was not substantially covered by a charge actually given, and (3) dealt with some point in the trial so important that failure to give the

requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Eckhardt*, 466 F.3d 938, 947-48 (11th Cir. 2006) (internal citations omitted).

Ellicott concealed the truth about having sex with a minor as part of his sentencing (Doc 120 p. 32, lines 6-11). When that issue was raised during the closing, the trial court judge greatly prejudiced the jury by castigating Mr. Shirey's counsel in front of the jury regarding his characterization of Ellicott 's truthfulness or lack thereof. (Doc 122 pp. 91-94) The trial court erred in declaring that Ellicott did not withhold anything at sentencing (Doc 122 p. 93, lines 17-18).

Ellicott's testimony at trial, under oath, was that his contemporaneous understanding of the transaction was that it was a loan to Greenberg. He did not testify as to awareness of any scheme to commit Honest Services Fraud. His plea agreement, however, stated that he "knew the unlawful purpose of the plan and willfully joined in it." (Doc 82-2, page 2).

**ISSUE III:**

## SUMMARY OF THE ARGUMENT

Contractually authorized markups are questions of state contract law, not federal criminal law, and to do otherwise "criminalizes traditionally civil matters and federalizes traditionally state matters" in defiance of *Ciminelli*. The Defense cited *Ciminelli* in challenging both the trial court's holdings and the Government's theory that the standard-form contract was somehow part of a conspiracy.

*Percoco v. United States*, 143 S. Ct. 1130 (2023) invalidates the Government's definition of "public official" when applied to a private individual such as Mr. Shirley. Under the Government's theory, every contractor is a "public official," including the janitorial contractor, the supplier of toilet paper, and any contracted plumber. *Percoco* rejected the Government's public official test. In this case, the Government has no test, which *Percoco* forbids.

A just-issued Supreme Court opinion, *Snyder v. United States* 603 US ____ (2024), *slip op* p. 13, reinforces the skepticism that is entirely appropriate when "the Government advances the familiar plea that federal prosecutors can be trusted not to enforce this statute against small-time violators. But as this Court has said time and again, the Court 'cannot construe a criminal statute on the assumption that the Government will use it responsibly.' *McDonnel*l, 579 U. S., at 576 (quotation marks omitted); see *Percoco v. United Stat*es, 598 U. S. 319 (2023); *Ciminelli v. United*

*States,* 598 U. S. 306 (2023); *Kelly v. United States,* 590 U. S. 391 (2020); *Skilling v. United States,* 561 U. S. 358 (2010)."

## ARGUMENT

The Supreme Court recently admonished federal prosecutors for making "a federal crime of an almost limitless variety of [allegedly] deceptive actions traditionally left to state contract and tort law—in flat contradiction with our caution that, '[a]bsent [a] clear statement by Congress,' courts should 'not read the mail [and wire] fraud statute[s] to place under federal superintendence a vast array of conduct traditionally policed by the States.'" *Ciminelli* at 1128 (internal citations omitted). The Government's conspiratorial element is purportedly the standard-form contract between Praetorian and the Tax Collector's office, nearly identical to several other contracts with outside consultants (Doc 119, p.69, lines 2-10; p.123 lines 17-24), all of which were drafted by independent third-party attorney Wade Vose (Doc 119, p.69 line 11-p.70 line 3).

Disputes about contractually authorized markups are questions of state contract law, not federal criminal law. To do otherwise "criminalizes traditionally civil matters and federalizes traditionally state matters" in direct contravention of clear guidance from the Supreme Court. *Ciminelli* slip op., at 8.

The Government alleged that entering into the contract was part of the conspiracy (Doc 1, p.2). While the Government makes no allegation that anything

31

was improper about the contract except that the invoices that were submitted included "inflated" prices (*Id.*), the evidence was insufficient to show that markups were a crime or even improper.

The contract itself, however, contains clear and unambiguous language allowing Praetorian to invoice for "fees and costs" associated with deliverables procured from third parties:

> Consultant shall invoice fees and costs relating to such deliverables to Tax Collector, which invoice shall be promptly paid prior to the production of such deliverables.

(Government Exhibit 1, p.3).

The term "fees" in the contract is clearly separate from, and in addition to, "costs" of third-party goods and services. Post-*Ciminelli*, any examination of whether the markup "fees" under the contract were improperly "inflated" as per the Government's claim falls squarely within the realm of Florida contract law:

> a "usage of trade" is any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question. Fla. Stat. §671.205(3)

Mr. Shirley routinely included markup fees on third-party products and services for multiple clients, clearly establishing a "usage of trade." If there were an objection to any markup fees, that objection should have been handled as a state law contract issue, not a federal criminal issue.

32

Furthermore, Mr. Shirley also established a "course of dealing" under Fla. Stat. §671.205(2), which defines, a "course of dealing as:

> a sequence of conduct concerning previous transactions between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.

Every single invoice regarding third-party deliverables contained markup fees, yet the indictment only covers invoice payments made in September and December of 2017 to create a false tie to the alleged bribe that allegedly took place in September 2017, a full nine months after the contract was executed. The Government's theory is chronologically flawed.

No evidence was introduced that anyone objected to any invoices, nor should there be, because the markup fees were allowed under the contract. (Doc 119, pp.70-71; p.121, lines 16-20; p.120, lines 4-16; p.123, lines 5-16)

The Government's original theory required that pre-September payments be ignored because, if they were considered, it strains credulity to believe that Greenberg entered into a contract, Praetorian delivered the contracted-for goods and services, disinterested third-party non-political employees properly processed and paid Praetorian's invoices, and then, nine months later, an alleged $6,000 kickback was the purported benefit to Greenberg, who took no subsequent official action.

Although this Court has not explicitly held that concealment is necessary to prove honest services fraud, *United States v. Langford*, 647 F.3d 1309, 1321 (11th Cir.

2011), Shirley concealed nothing, as Praetorian's contract and invoices were publicly available (Fla. Stat. §119). Thus, while the most glaring defect in the Government's theory in the indictment remained the chronology, the Government would have the jury believe that a valid, publicly available contract was signed by Greenberg with the understanding that nine months later, an alleged co-conspirator, would approach Mr. Shirley for a bribe.

Only after switching strategies to make Mr. Shirley a "public official," did the Government claim that pre-September 2017 markups were a violation of Mr. Shirley's purported duty as a "public official," which was never part of the indictment. The public official owing a duty in the indictment was Greenberg. With substantial deviations from the pattern jury instructions bolstering the Government's alternate theory not found in the indictment, the Trial Court erred by allowing the "criminaliz[ation of] traditionally civil matters and federaliz[ation of] traditionally state matters" in defiance of *Ciminelli* (*Id.* at 1128).

Under the Government's theory, every contractor is a "public official", including the janitorial contractor, the supplier of toilet paper, and any contracted plumber. *Percoco* rejected the Government's public official test. In this case, the Government has no test, which *Percoco* forbids:

> Rejecting this absolute rule [that private individuals cannot be public officials *per se*] is not enough to sustain Percoco's convictions on the wire fraud conspiracy counts. "[T]he intangible right of honest services" codified in §1346 plainly does not extend a duty to the public

34

to all private persons, [thus] the correct test [must be articulated and applied].

*Percoco*, at 1138.

A just-issued Supreme Court opinion, *Snyder v. United States* 603 US ____ (2024), *slip op* p. 13, reinforces the skepticism that is entirely appropriate when "the Government advances the familiar plea that federal prosecutors can be trusted not to enforce this statute against small-time violators. But as this Court has said time and again, the Court 'cannot construe a criminal statute on the assumption that the Government will use it responsibly.' McDonnell, 579 U. S., at 576 (quotation marks omitted); see *Percoco v. United State*s, 598 U. S. 319 (2023); Ciminelli v. United States, 598 U. S. 306 (2023); K*elly v. United State*s, 590 U. S. 391 (2020); *Skilling v. United States,* 561 U. S. 358 (2010)."

**ISSUE IV:**

## SUMMARY OF THE ARGUMENT

The Government failed to make a  prima facie case. Mr. Shirley did not pay any bribe or kickback to Greenberg. The only testimony as to any purported statement by Greenberg was that Shirley was going to loan Greenberg money, which, had it happened, would have been a lawful gratuity. There was no evidence of any official action as alleged in the indictment.

## ARGUMENT

The evidence was insufficient to show any conspiracy to commit Honest

Services Fraud as no witnesses testified as to even a single alleged conversation

between Greenberg and Shirley regarding Honest Services Fraud, much less an

agreement to engage in such alleged fraud.

```
Q. [D]id you witness any conversations
between Mr. Greenberg and Mr. Shirley regarding the contract on
January 3rd of 2017?
A. No.
Q. Okay. So you don't have any information about any alleged
scheme regarding this contract on January 3rd, 2017.
A. No.
```
(Tr.Doc 119, p.71, lines 17-23)

The evidence was insufficient to show that Mr. Shirley was a public

official, nor did the Government show that Mr. Shirley took any official action or

had any official position, nor was he able to under the plain language of the contract.

He was merely a vendor, not a public official, but the Trial Court's error allowed the

Government to mislead the jury into believing that Mr. Shirley was a public official.

The Trial Court nonetheless "criminalize[d] traditionally civil matters and

federalize[d] traditionally state matters" in defiance of *Ciminelli*. *Id.* At 1128.

The evidence was insufficient to show that any action was taken by Greenberg

pursuant to any agreement, much less an agreement to "commit honest services

fraud, as charged in the indictment" (Doc 78, p.15)

The Government alleged that entering into the contract was part of the conspiracy (Doc 1, p.2). While the Government makes no allegation that anything was improper about the contract except that the invoices that were submitted included "inflated" prices (*Id.*), the evidence was insufficient to show that markups were a crime or even improper.

Shirley clearly challenged the sufficiency of evidence regarding any agreement "to commit wire fraud and honest services fraud" (Tr.Doc 1, p.2). *See e.g.* App.Doc 5-1, pp. 14-17, 25. Shirley clearly challenged the sufficiency of evidence regarding the four counts of honest services fraud (App.Doc pp.17-20). Rather than fraudulent, the testimony clearly established that markups were proper. (Doc 119, pp.70-71; p.121, lines 16-20; p.120, lines 4-16; p.123, lines 5-16). As for the purported $6,000 kickback, the Trial Court overruled Shirley's objection that Ellicott testified that he gave Greenberg $6,000 (Tr.Doc 119, p.277, lines 1-13) as Ellicott admitted that he never counted the money Shirley loaned him or even open the envelope (*Id*, p. 34, lines 9-18).

To convict under federal bribery statute, there must be a quid pro quo, a specific intent to give or receive something of value in exchange for an official act, while illegal gratuity may constitute merely a reward for some future act that public official will take and may already have determined to take, or for a past act that he

has already taken. 18 U.S.C.A. § 201(b)(1, 2), (c). See *United States v. Sun Gowers of California,*  526 U.S.  398, 119 S. Ct. 1402 ( 1999) .

In this matter, the facts, even in the best light  for the Government, indicate a "kickback"  was given by the Defendant to a public official for rewarding him with a contract. That  evidence is  insufficient to establish a quid pro quo, a specific intent to  give  or  receive  something  of  value  in  exchange  for  an  official  act.  The Government  failed  to  "cover  their  bases"  by  not  filing  a  count   charging  the Defendant  with  giving  a  public  official  an   illegal  gratuity  (an  illegal  gratuity  is defined  below  in  Issue  V  and  VI)   and  therefore  this  case   should  have  been dismissed  at the close  of the Government's case. See *United States v. Fernandez,* 722 F.3d 1, 19 (1st Cir. 2013) "Therefore, if the agreement to exchange a thing of value for an act is made after that act has been performed, that agreement cannot be properly viewed as an agreement to offer or accept a bribe."

 **ISSUE V:**

## SUMMARY OF THE ARGUMENT

The improvised jury instructions substantially deviated from the pattern jury instructions  and  the  indictment.  In  particular,  Instruction  15,  fundamentally deviated  both  from  the  pattern  jury  instruction  and  the  plain  language  of  the indictment. Because Honest Services Fraud requires a clearly defined public official

to take an action that deprives the public of honest services, Instruction 14 was also implicated.

Separately, although none of the $5,000 that Mr. Shirley loaned to Ellicott were ever subsequently loaned to Greenberg, assuming *arguendo* that the loan to Greenberg occurred, it would have been at worst an unlawful gratuity and not a bribe, and the trial court erred by not instructing the jury about a lesser included charge of unlawful gratuity.

## ARGUMENT

The Defense contends that the March 2022 pattern instructions (https://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormCriminalPatt ernJuryInstructionsRevisedMAR2022.pdf) must be updated post-*Ciminelli* and post-*Percoco*. Assuming that substantial modifications are unnecessary, Instruction 15 fundamentally deviated both from the pattern jury instruction and the plain language of the indictment.

Although the Government acknowledged deviations from the pattern (Doc 57, p.36, n.2), it significantly downplayed the extent of those deviations. (Doc 120, p.225, line 25 - p.226, line 12). In particular, the Government failed to note that proposed definition of "public official" used in *United States v. Spellissy* (8:05-cr-00475-JDW-TGW, Doc 58 at 14) came from a jury instruction for a statute that was

not charged in this case and the definition was itself a substantial deviation from that statute's pattern instruction O5.1 (Pattern Instructions, p.113).

While modification of O50.2 is anticipated in the case of Wire Fraud (Pattern Instructions, p.360), wholesale modifications turning an independent contractor into a public official was reversible error.

The Government deviated from the pattern regarding the definition of "public official" presumably because it might have to change its theory on the fly to make Mr. Shirley a "public official" if it failed to secure testimony about any agreement with Greenberg. The Government concealed this alternate strategy, emphasizing a case that allowed a private citizen like Mr. Shirley to be "prosecuted under a public employee honest services theory," (Doc 57, p.36, n.2) which was the theory the Government maintained until forced to change theories.

Since none of the Government's witnesses could testify to even a single decision allegedly taken by Greenberg, nor was there testimony that Mr. Shirley and Greenberg had agreed on any actions to be taken, the Government switched to its backup plan to label Mr. Shirley as a "public official" by further deviating from the pattern with last-minute modifications. (Doc 122, p.4, lines 3-7). The Defense objected, (*Id.,* p.5 line 1 – p7, line 1; p.7 line 10 – p.8 line 13), but the court overruled (*Id.*, p.7, lines 5-6; p.8, line 14-17). With this change, the Government could impose an improvised duty on an independent contractor and confuse the jury as to whether

Greenberg or Mr. Shirley was the "public official." Contrary to the indictment, the Government was now arguing that "There are multiple public officials here" including Mr. Shirley (Doc 122, p.7, line 24).

The evidence was insufficient to show Mr. Shirley ever made any decision on behalf of the Tax Collector's office. He was merely a vendor, not a public official, but the Trial Court's error allowed the Government to mislead the jury into believing that Mr. Shirley was a public official.

Unable to present evidence to the jury that Greenberg took any action, the Government concealed their change in strategy until its rebuttal. For the first time they argued to the jury that Mr. Shirley was a public official, which was never part of the indictment. The Government's rebuttal made the change clear, highlighting "all of the overwhelming evidence that suggests to you that Mr. Shirley is guilty of honest services [fraud]" (Doc 122 p.55-56) and "Mr. Shirley did not provide honest services." (Doc 122 p.57, lines 20-21). "Mr. Shirley works for a government agency, and he owes the public a duty of honest services." (Doc 122 p.105, lines 11-12). At that point, the Defense had no opportunity to respond in front of the jury, and the Trial Court responded to Defense's objection, "whatever your motion Is, it's denied." (Doc 122, p.105, line 113).

This Court should note that the same Government attorney that delivered the closing at Mr. Shirley's trial made a directly contradictory representation at Ellicott's

sentencing hearing, identifying Mr. Shirley as a contractor, and specifically not a public official. (Doc 82-3, p.24, lines 20-24).

As noted in *Skilling v. United States*, "constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a general verdict that may rest on a legally invalid theory." 561 US 358, 414 (210), citing *Yates v. United States,* 354 U.S. 298 (1957). Unlike the indictment, the jury instructions allowed the jury to convict irrespective of who it thought might be a "public official."

The Jury Instructions contain no test of "public official," much less a "correct test," which *Percoco* demands, since "§1346 plainly does not extend a duty [to all private persons, the] correct test [must be determined]" (*Id*. At 1138). Otherwise, every officer and director of both FedEx and UPS are public officials.

The Government clearly changed its theory at trial. The indictment never calls Shirley a public official, yet the Government changed its definition of "public official" at the last minute because it failed to call the only public official identified in the indictment. As such, lead attorney Bratt admitted that "the jury will need to find that [Shirley] was a public official" (Tr.Doc 122, p. 4, lines 5-6), which was never part of the indictment.

Although the Defense counsel did not fully articulate the objection to the definition of "public official" in its initial proposal, the contract law specialist brought in by Shirley right before trial made multiple timely and appropriate

42

objections to the defective definition in the improvised jury instruction. (Tr.Doc 120, p. 223-225; Doc 122, pp.5-8, 9). The improvised jury instructions did not "adequately cover" Shirley's final proposed instruction (Tr.Doc. 122, p.7, lines 10-17).

 **ISSUE VI:**

**SUMMARY OF THE ARGUMENT**

Trial counsel for the Appellant was ineffective when he failed to object to a plethora of blatantly obvious leading questions that allowed the Government to introduce via the alleged co-conspirator Ellicott's testimony the only substantive evidence that could have allowed a jury to find the Appellant guilty of a criminal conspiracy. Defense counsel was also ineffective for not arguing for an acquittal after the government's case because the evidence introduced at trial could only have supported a conviction for an illegal gratuity and not a bribery. Subsequently the Defense counsel did not argue for a jury instruction for the crime of illegal gratuity as a lesser included offense of bribery. Given the plethora of malfeasance and or or nonfeasance by Defense counsel, this court should remand based upon ineffective assistance of counsel based on a cumulative effect.

**ARGUMENT**

Ellicott's decisive testimony begins at (Doc. 119 at pg. 240). Beginning on (Doc. 119 p 263) wherein Ellicott answers with a simple yes or no to six straight

leading questions (without objection). In (Doc. 119 pg. 264 ln 3-8) three straight leading questions are allowed to be answered without objection. Then at (Doc. 119. pg 265 ln 8-13) the following question was asked:

 "Based on your understanding and your observation of this event, did the defendant know that you were going to give this cash to Mr. Greenberg?

A. Yes."

Thus, the Government was allowed through a leading question to introduce evidence of Mr. Shirley's *mens rea* without objection from Defense counsel. This question was followed by a question that was answered by hearsay (no objection) and then the following two questions were once again leading questions that were no objected to:

"Well, because Joel told me he needed it, and I made plans with Mike Shirley to go get it. And I got it, and then I gave it to Joel like the plan was supposed to be.

Q. Uh-huh. After the time -- after that time, did the defendant keep doing consulting work for the tax collector's office?

A. I believe so, yes.

Q. Was this type of exchange a normal occurrence for you?

A. No."

(Doc. 119. 265 ln. 13-22)

44

The Government is then allowed to ask approximately forty leading questions, most of them in sequence, with the answer given to most of the questions being a simple "yes". (Doc. 119 pg. 266-277) The most damaging questions and answers being:

"As you sit here today, as you understand it, was this cash a kickback from the defendant to Greenberg?

A. Yes." (Doc. 119. 266 ln 15-17)

This was a failure by Defense Counsel to object to the witness testing to a factual conclusion for the jury to decide. The question would be akin to the Government asking Ellicott if he thought Shirley was guilty as charged.

"During that event, you initially thought that you were picking up a loan. Is that correct? A. Yes

"After you picked up the cash, did you have a different understanding of what had happened? A. Yes.

"Q. Okay. Why? What about that event? THE COURT: What -- THE WITNESS: I saw -- **THE COURT: Excuse me. What did you learn that caused you to change your opinion?** THE WITNESS: Just that I saw evidence in the course that made me think that it was, and that's why I pled guilty to what I pled guilty to. BY MS. DANIELS:

45

" Q. Okay. Did -- were you -- are you referring to sort of this contract that you understood to be fake? A. Well, yeah. I mean, that was -- I always -- the reason I kept the paper was 'cause I always had misgivings about it.

Q. And you understand that to be a fake contract. Is that correct? A. Yes. Absolutely.

Q. What about the fact that the payment came in the form of cash?

A. I mean, at the time. I mean, it was an unusual event. But the fact that it was cash, I mean, I don't know that that really -- I guess it struck me as a little weird, but at the same time ...

**Q.** Okay. And what about the fact that Mr. Shirley mentioned that he had a contract with the tax collector's office, and it would look bad?

A. Yes.

Q. And what about the fact that you knew Mr. Shirley was working at [sic] a contractor? A. Yes.

 Q. So did all of those things together add up to you understanding that this was a kickback? A. Yes.

Once again, this was a failure by the Defense Counsel to object to the witness testing to a factual conclusion for the jury to decide. The question would be akin to the Government asking Ellicott if he thought Shirley was guilty as charged.

46

Q. You mentioned earlier that during the transition period the defendant did more regular work for the tax collector's office. By 2018, was this transition period over? MR. PARKER: Objection, Judge. Leading. THE COURT: **That one is not leading**. Overruled" (Doc. 119 pg. 270, 271).

Courts of Appeals generally "do not consider claims of ineffective assistance of counsel on direct appeal as there usually has been insufficient opportunity to develop a record regarding merits of claims; however, a court will consider ineffective assistance claim on direct appeal if record is sufficiently developed." See *United States v. Camacho,* 40 F.3d 349 (11th Cir. 1994).

Unlike most challenges for ineffective assistance of counsel the basis for Mr. Shirley's argument is a matter set forth in the transcripts record of the testimony and therefore the record on appeal is sufficiently developed to allow this court to entertain the argument for ineffective assistance of counsel.

To succeed on a "Sixth Amendment claim of ineffective assistance of counsel, defendant must show that there is a 'reasonable probability,' which is a probability sufficient to undermine confidence in the outcome, that, but for counsel's unprofessional errors, result of the proceeding would have been different" See *Strickland v. Washington,* 466 U. S. 668 #19 ( 1984).

*Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" <u>466 U.S. at 687, 104 S.Ct. 2052</u> (quoting *<u>McMann v.</u>*

*Richardson,* 397 U.S. 759, 770, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)); see also *Gentry, supra,* at 7, 124 S.Ct. 1. Representation is constitutionally ineffective only if it "so undermined the proper functioning of the adversarial process" that the defendant was denied a fair trial. *Strickland , supra,* at 686, 104 S.Ct. 2052.

The attorney for the Government was allowed to question Ellicott through leading questions, resulting in the Government's attorney basically testifying herself in the manner of a proffer, and therefore able to preach to the jury his case in chief though affirmations of fact, clothed in the form of questions, that lead to only one possible answer from Ellicott, "yes", which equated to an "amen corner" during a preacher's sermon.  Therefore, the Government's case in chief was not contested as it should be in an adversary proceeding and guaranteed by the Sixth Amendment.  Mr. Shirley was for all intent and purposes was without counsel during most of Ellicott's testimony, the result of an absence of objections to the absurd number of leading questions became tantamount to Mr. Shirley sitting at his desk in front of the jury, without an attorney, and a de facto violation of Mr. Shirley's right to have to have counsel pursuant to U.S.C.A. Const. Amend. 6.  Mr. Shirley's counsel was certainly outside the range of professional competent assistance.

*Strickland* asks whether it is "reasonably likely" the result would have been different. *Id.,* at 696, 104 S.Ct. 2052. This does not require a *\*112* showing that counsel's actions "more likely than not altered the outcome," but the difference

48

between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id.,* at 693, 697, 104 S.Ct. 2052. The likelihood of a different result must be substantial, not just conceivable. *Id.,* at 693, 104 S.Ct. 2052.

The Defense counsel allowed the Government to build their entire case on the second-hand (hearsay) testimony of Ellicott. This prejudicial error resulted in the Government being allowed to inform the jury of conclusions of fact, rather than "actual facts' ' regarding Mr. Shirley's *mens rea* of entering into a conspiracy.

Meanwhile, the best available evidence for the Government to present was, and still is, Mr. Greenberg himself. Yet, for some peculiar reason the Government failed to call Mr. Greenberg to testify, and the Defense also failed to call Mr. Greenberg to testify. Instead, the Government was allowed, without objection, to introduce into evidence their crafted web of hearsay and conjectures to the jury. Therefore, if the Defense Counsel had competently challenged the hearsay testimony via answers to leading questions, one would conclude by any objective analysis that there would have been a reasonable likelihood of an acquittal.

Further, as set forth above, the Defense counsel failed to argue the Government's case could have only supported a jury verdict finding that a public official revived a gratuity and not bribery. Alternatively, Defense Counsel failed to request a lesser included offense of illegal gratuity. "Because payment of an illegal

49

gratuity is a lesser included offense of bribery of a public official, it is important that a jury be properly instructed on the difference between a bribe and a gratuity in cases when there is a question about the nature of the alleged payment. <u>18 U.S.C.A. § 201(b)(1)(A)</u>, <u>(c)(1)(A)</u>" See *United States v. Jennings*, 160 F.3d 1006 ( 4th DCA 1998)

Lastly, based upon the litany of acts of malfeasance and nonfeasance by the Defense counsel, ineffective assistance of counsel can be established based upon an accumulation of bad acts. "But courts need only consider the cumulative prejudicial effect of counsel's alleged errors if they first conclude counsel performed deficiently in numerous ways." *See <u>Ellis v. Raemisch</u>, 872 F.3d 1064, 1090 (10th Cir. 2017)*.

**ISSUE VII:**

### SUMMARY OF THE ARGUMENT

The holding of *Percoco v. United States*, 143 S. Ct. 1130 (2023) invalidates the Government's definition of "public official" when applied to a private individual such as Mr. Shirley. Under the Government's theory, every contractor is a "public official," including the janitorial contractor, the supplier of toilet paper, and any contracted plumber. *Percoco* rejected the Government's public official test. In this case, the Government has no test, which *Percoco* forbids. Further, there was no evidence or finding that the contract for employment between Praetorian and the

taxpayers office  was illegal or a sham, and therefore the $12,500.00 per month received by Praetorian should not have been calculated as loss for sentencing purposes.

## ARGUMENT

The Government failed to charge Greenberg with Honest Services Fraud (Transcript, July 26, 2024, p. 12, line 24), which begs the question of what "honest services" were at issue and how was the public a victim. When the Government changed its theory at trial to make Mr. Shirley a public official with a duty to the county (Transcript July 27, p. 105, lines 11-12), that theory also failed. In *Percoco v. United States*, 143 S. Ct. 1130 (2023) the Government argued "that a private individual owes a duty of honest services to the public … 'when the person exercises the functions of a government position with the acquiescence of relevant government personnel.'" (slip op.at 11). The Supreme Court unanimously rejected that theory, and thus Mr. Shirley cannot have engaged in Honest Services Fraud.

The Government's definition of "public official" in this case is even more vague:

> A "public official" need not be an employee of the government agency. A person who acts for or on behalf of the government agency pursuant to a contract or other business relationship can be a government "public official," just as an employee can be a "public official." (Doc 78, p.18)

The Defense objected to the Government's deviation from the pattern jury instruction regarding "public official" in light of *Percoco*. The court overruled that objection (Doc 122 p. 9, lines 4-20).

At sentencing the case cited by the Government and relied upon by the trial Court to treat Mr. Shirley as a public official was clearly distinguishable. In that case, *United States v. Reese*, 681 Fed. Appx. 846 (11th Cir. 2017), the Appellants were the Executive Director and Director of Maintenance of a transit authority. Their status as employees was not in dispute. The Appellants argued they were not public officials. This Court properly disagreed. Regarding Mr. Shirley, however, the contract prepared by an independent attorney specified that, "The parties intend that the consultant, in performing services specified in the agreement, shall act as an independent contractor and not be deemed an agent, legal representative, joint venture, partner, employee, or servant" (Doc 158, p.63, lines 8-12). The trial court *sua sponte* ruled erroneously that Mr. Shirley was a public official.

In *Reese*, the Appellants were charged with enriching themselves via official actions taken in their official capacity. *Reese* at 849. The evidence was insufficient to show that Mr. Shirley took any official action or had any official position, nor was he able to under the plain language of the contract. The Trial Court nonetheless "criminalize[d] traditionally civil matters and federalize[d] traditionally state matters" in defiance of *Ciminelli*. *Id* at 1128.

Furthermore, a strict application of the definition of "public official" in the U.S.S.G. §2C1.1 cannot lead to Mr. Shirley being found to be a public official because he doesn't fit the definition. The applicable subcategories are:

> (C) An officer or employee or person acting for or on behalf of a state or local government, or any department, agency, or branch of government thereof, in any official function, under or by authority of such department, agency, or branch of government

…

> (E) An individual who … (i) is in a position of public trust with official responsibility for carrying out a government program or policy; (ii) acts under color of law or official right; or (iii) participates so substantially in government operations as to possess de facto authority to make governmental decisions

Subcategory C does not describe Mr. Shirley because he did act on behalf of the Tax Collector "in any official capacity" nor was any evidence of any such action or official capacity introduced. Subcategory E does describe Mr. Shirley because he did not have any "official responsibility for carrying out a government program or policy," nor did he act "under color of law or official right," nor did he have "de facto authority to make governmental decisions." No evidence to the contrary was introduced, because no such evidence existed.

In both the indictment and the Government's argument at the sentencing of Ellicott (Doc 82-3, p. 24), Mr. Shirley was always clearly identified as a contractor, not a public official. Every employee testified that Mr. Shirley was a contractor with no authority to make decisions or take official action on behalf of the Tax Collector. (*See e.g.* Doc 119, pp.56-59; p.115, line 4; pp.116-117; p.172, lines 21-23; p.177,

lines 3-18; p.207, lines 8-19; p.247, lines 3-5). Ellicott similarly testified (*Id*, p247, lines 3-5; p.271, lines 6-12).

When "a defendant challenges one of the factual bases of his sentence … the Government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir.1995). This burden must be satisfied with "reliable and specific evidence." *Id*. Therefore  the evidence was insufficient to show that Mr. Shirley was a public official and the objection to the enhancement set forth in PSR ( DOc. 114 pg 14 pr. 43) should be sustained and the total offensive level should be 26.

Also at sentencing, the trial court overruled the objection to  the loss amount calculation  set forth in Mr. Shirley Sentencing Memorandum, (Doc. 126 pg.5 Pr C) (Doc. 158. Pgs. 69-70). The monies earned by Praetorian were  legitimately earned and  there was no direct  evidence to indicate  that the $12,500.00 a month received by Praetorian was a sham.  Therefore, the sentencing guideline score should be  recalculated.

## CONCLUSION

Based on the foregoing argument, reasoning, and citations of authority the Appellant, Mr. Michael Shirley, respectfully requests that this Court reverse the order(s)  denying  the  request(s)  that  the  case   against  Mr.  Shirley  be dismissed    and/or in the alternative remand this case with instruction on how to

proceed on any of the numerous questions of law and procedure that are at issue in this case and grant or  other such relief available by law or equity.

If this court is inclined to dismiss the arguments set forth as harmless errors, there were so many errors that the cumulative effect warrants at least a new trial.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by United States Mail/email to and to Mike Shirley at Michael Shirley #19218-510, FCI Miami, Satellite Camp, P.O. Box 779800, Miami FL 33177 and Assistant United States Attorney, David Rhodes and ASUA Julia R. Kapusta (Julia.kapusta@usdoj.gov ), 400 North Tampa Street, Suite 3200, Tampa, FL 33602 this  10th   day of August  2024.

*/s/ H. Kyle Fletcher[1]*
H. Kyle Fletcher, Esq

---

[1] The undersigned acknowledges the instrumental help of Dr. Gavin Clark Esq., in preparing this  Initial Brief

55